### JOHN E. HOAGLAND ads. PETER R. HALL.

1. There is nothing illegal in an agreement to transfer a license to keep an inn, although the license after its transfer will be inoperative.
2. A party agreeing to take an assignment of a lease, is not bound to take an assignment which contains a covenant on his part to pay the rents

and perform the covenants stipulated for in the lease, as such a cove-- nant imposes a burthen not agreed to be assumed by him.

3. A suit will not lie on a check given in part payment of the considera- tion for the assignment of a lease, a legal tender having been made of such assignment, if before suit brought the assignor has parted with the leased premises to a third party.

This was a case certified from the Circuit Court of the county of Essex.

These were the facts: On 27th May, 1875, Hall, the plain- tiff, and Hoagland, the defendant, entered into articles of agreement under seal, whereby the plaintiff agreed to " well and sufficiently convey " to the defendant, his heirs and assigns, " by bill of sale," and " by deed of assignment," as- signing the lease of the premises, &c., and all the goods and chattels as mentioned and described in the schedule hereto annexed, written in lead pencil. Said bill of sale and assign- ment to be made on the 1st June then next. The schedule in pencil annexed to the agreement included in it " the licenses of the house."

On his part the defendant agreed to pay, as the purchase money, $2000, as follows: $500 on the day of executing agreement; $500 on or before the 1st day of June then next, and the remaining $1000 in an endorsed note, dated 1st June, 1875, payable in four months.

Upon the execution of the agreement the defendant gave the plaintiff his check, dated 27th May, 1875, upon the First National Bank, at Somerville, for $500.

This was the check sued on—the action being commenced on the 30th June, 1875.

The assignment of the lease which, with a bill of sale of the goods, was duly tendered on the 1st of June, contained this clause: " That the said John E. Hoagland doth pay the rent at the time the same becomes due, and that he does well and truly keep and perform all the covenants and agreements contained in said lease to be kept and performed on my (Hall's) part." At the time of the tender this clause was objected to by the defendant, and he required it to be struck

---

Hoagland ads. Hall.

---

out. This the plaintiff declined to do, and the papers were not delivered on either side.

On the 10th June, 1875, by agreement of that date, the plaintiff let to one V. F. the sitting-room, dining-room, kitchen, with the use of the furniture in the dining-room, kitchen, and five bed-rooms, for nine months and ten days, from the 25th June, 1875, and on that day V. F. took possession. On 25th September, 1875, the defendant sold his interest in premises to one V.

Under the direction of the court, a general verdict was given for the plaintiff, the following questions being reserved for the Supreme Court:

1. Whether the plaintiff was prevented from recovering, because incapable of performing his part of the contract, for the reason that the license was not assignable?

2. Whether the assignment tendered was such as, by the agreement, the plaintiff was bound to tender?

3. Whether the right of the plaintiff to recover upon the check was affected by the lease or assignment to V. F. or V?

Argued at February Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL, VAN SYCKEL, and SCUDDER.

For defendant, *J. R. Emery.*

For plaintiff, *Ludlow McCarter.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The defendant agreed to give $2000, in consideration of the assignment of a certain lease, and the sale and transfer to him of certain personal property. The check in suit was given in part payment of this consideration money.

Among the articles agreed to be thus sold and transferred was a license to keep an inn, granted under the laws of this

state, and the first question propounded, for the consideration of this court is, whether a recovery in this action is prevented, for the reason that the plaintiff was incapable of performing this part of his contract, inasmuch as this license was not assignable.

The point of the objection thus taken was, that although the plaintiff was willing and ready, at the time appointed, to make this assignment, that he could not do so, because such act would have been illegal.

This objection rests on the fallacy of assuming that the plaintiff agreed to transfer to the defendant a license, which, as such, would be operative in his hands. But this was not so ; we are bound to consider that both of these contracting parties knew what the law was, and were aware that this paper would not be efficacious as a license after a transfer of it ; and the consequence is, it stands as an incontestable fact that the defendant, when he stipulated for the license, did not expect to keep an inn by virtue of it. The transfer of it would have been a legal act; the use of it as a warrant to keep an inn would have been illegal. The language of the statute is : "No license shall entitle any person to keep an inn and tavern in any other place than that in which it was first kept, by virtue of such license ; and such license, with regard to all other places and persons, shall be void." The court must charge the defendant with a knowledge of this law, and it thus becomes certain that what he sought was the acquisition of a paper which would be absolutely ineffectual as an authority to keep a tavern. He may have thought this in some way beneficial, as in a future application to have his house licensed as an inn; but whatever his motive, or want of motive, there was nothing illegal in the thing, and it will not, consequently, avoid the contract. "Where a party obtains what he contracted for," says the court, in the case of *Fay's Adm'rs* v. *Richards et al.*, 21 *Wend.* 626, "he cannot annul his contract on the ground that what he received is valueless, unless he shows fraud or misapprehension in respect to the subject matter of the contract."

The authorities cited, in behalf of the defence on this point, are not relevant. They are all cases in which the party seeking to enforce the agreement had not been able to do, on his part, that which he had undertaken to do.

The second question, an answer to which is asked of this court, is, whether the assignment tendered was such as by the agreement the plaintiff was bound to tender.

The case sent to this court shows that on the day fixed for performance, the plaintiff tendered an assignment of the lease in question, and that embodied in such assignment there was a stipulation that the defendant would pay the rent at the time the same should become due, and that he would keep and perform all the covenants and agreements to be kept and performed on the part of the lessee.

By his covenant to purchase this lease, the defendant had agreed to become the assignee of it—that is, to take upon himself all the rights and liabilities which appertained to that relation. What such liabilities were, was a matter of law; he was bound to assume them; he was not bound to assume any thing more. But it is impossible to deny that the stipulations interpolated into this assignment does not impose a greater burthen than a naked assignment would have carried with it. As assignee he could not have been compelled to perform, speaking generally, the covenants of the lessee, nor to pay the rent under all circumstances. The law is clear upon this point, and the cases will be found referred to in *Taylor's Land. and Ten.*, § 449. By this disputed clause the defendant is made to bind himself to the performance of the lessee's covenant, and to the payment of the rent to the full extent of the liability of such lessee. This was an enlargement of his responsibilities to which he had a right to object. The assignment tendered was not such a one as the plaintiff was bound to tender.

The last question propounded is, whether the right of the plaintiff to recover upon the check was affected by the lease or assignment to Van Fleet or Vroom.

In considering this point, it is to be assumed that the plaintiff, as long as the contract was performing, was not in fault. In this connection he is to be treated as though he had tendered, at the appointed time, a proper assignment of the lease, and a legal bill of sale. The note, which is the subject of the suit, was given for the first payment which was due on the date of the agreement, but before the commencement of the action the plaintiff, considering the contract broken, and that he had made a tender on his part, transferred to a third party such an interest in the leased property as put it out of his power to give the interest in it to the defendant, which was his due, if the contract had been complied with on his side. The legal proposition, freed of surplusage, is this: Can a vendee, giving his check in part payment at the time of the agreement to purchase, and who subsequently, at the time for performance, fails to comply with the terms of sale, be sued on such check after the vendor has sold the subject of the sale?

If a suit, under the conditions specified, will lie, then in this class of cases a measure of damages for breach of contract is prescribed very different from that which is usually applied in this department of the law. If an agreement be broken, the general rule is, that the innocent party shall be indemnified for his proximate loss; the contention here is, that he may recover all payments which fall due before the final breach, no matter what their amount, or how great their excess over the damage actually suffered. To state the case plainly—If A agrees to buy a house of B for $10,000, payment to be made in checks, in even amounts, ten days apart, the house to be delivered on the giving of the last check—in such case if the vendee refuses to comply by giving the last check, the vendor can sell the house, and then recover the amount of $9000 on the nine checks thus given. A result so glaringly unjust is of itself a demonstration that it is not the product of legal rules properly applied. I have seen no case which, correctly interpreted, lends any countenance to the doctrine claimed, on this head, by the plaintiff. The prece-

dents do not throw much light, either directly or obliquely, upon this subject, for I have been able to find, after considerable research, but a single one which is in point. The true rule, I think, is, that in all cases where a vendor, after a breach on the other side, has parted with the subject of sale, and the vendee has abandoned the contract, the only remedy left to the vendor is an action for the non-performance by the vendee of the entire contract, and not for a non-performance of any of the particular stipulations of it. Where the price is payable in instalments, the refusal to pay the entire sum comprehends and nullifies the prior neglect to pay the instalments—that is, in case the vendor treats the contract as at an end, by parting with the thing sold. The single illustrative case, to which I have just referred, is that of *Palmer* v. *Temple*, 9 *Ad. & E.* 508. This case presented an entirely novel question, as the court says: " No authority bearing directly on the question was quoted, either from report or text book."

The facts were very closely similar to those giving rise to the matter now being considered. A agreed to demise a house to B for a term in consideration of £300 then paid "by way of deposit, and in part of £5500," the whole purchase money, possession to be delivered and accepted on a day named, but on the day B refuses to accept, and A afterwards disposed of the house to a third party ; it was held that this deposit might be recovered back on A's disposing of the house in the manner stated. There was a penalty stated in this agreement for non-performance, and Lord Denman, in his opinion, said : " The consequence appears to be, that this vendor may sue for the penalty, and recover such damages as a jury may award ; but he cannot retain the deposit, for that must be considered, not as an earnest to be forfeited, but as part payment. But the very idea of payment falls to the ground when both have treated the bargain as at an end, and from that moment the vendor holds the money advanced to the use of the purchaser."

A very little reflection will lead, it seems to me, to the conviction that the principle underlying this decision is

correct. The right to payment of money arising from a sale, can exist only when the title to the property sold has been or can be passed to the vendee; and after the vendee has refused to execute any part of the bargain, the vendor's whole claim to payment consists in his still being willing that such title shall pass. He can have no greater right after a breach, *in omnibus*, by the vendee, to demand one of the payments stipulated for in the contract of sale, than he has to demand any other of such payments. In the present case, why should not this plaintiff as well sue for the last payment of $1500, which was agreed to be made on the delivery of the lease, as for this first payment embraced in the check in suit? The defendant promised to pay the one as well as the other, and has broken his promise in both instances; and the plaintiff had an equal right to enforce both promises, by holding himself ready to render the consideration for such promise. And yet it is plain that, in correctness of theory, it can no more be maintained that the vendor, having parted with such consideration, can recover a part of the money agreed for, than he can the whole of such money. On the breach of the contract of sale by the vendee, the vendor has the choice of two courses: he may claim the price agreed on, retaining the article sold as bailee for the vendee, under his lien for the price; or, he can sell the article, treating the agreement as at an end, and sue for indemnification for the loss of his bargain.

I have examined, with attention, all the cases cited in the carefully prepared brief of the counsel of the plaintiff, but have not found any of them which does not rest on considerations foreign to those which are at present pertinent. None of these cases present the juncture of a contract which both parties equally refuse to consider as open. Upon a cursory perusal, the case of *Spiller* v. *Westlake*, 2 *Barnwell &. Adolphus* 155, might appear to be in point; but it exhibits the diversity that the party sued was, when the action was brought, in a situation to enforce the contract against the other contracting party. In other words, the contract was an open, and not a closed one: a feature which deprives it of all

present pertinence. So with the other authorities quoted ;. they either possess this mark of discrimination, or show an equivalent inapplicability from the circumstance that the contracts to which they relate, had been performed in part.

The Circuit Court should be advised in accordance with. the views above expressed on the several points.